1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - - - -

Jane Doe,                    :

     Plaintiff,         :

     vs.                  : Case No. 2:20-cv-00459
                    Judge Graham
Andrew K. Mitchell,          : Magistrate Judge
et al.,                        Litkovitz
                  :

     Defendants.          :

- - - - -

DEPOSITION OF ANDREW K. MITCHELL

- - - - -

Taken at United States District Court
Southern District of Ohio
85 Marconi Boulevard
Columbus, Ohio 43215
January 27, 2022, 9:21 a.m.

- - - - -

Spectrum Reporting LLC
400 South Fifth Street, Ste. 201
Columbus, Ohio 43215
614-444-1000 or 800-635-9071
www.spectrumreporting.com

- - - - -

  
2

1                    A P P E A R A N C E S

2

    ON BEHALF OF PLAINTIFF:
3
            David A. Goldstein Co., LPA
4           511 South High Street, 2nd Floor
            Columbus, Ohio 43215
5           By David A. Goldstein, Esq.
               Sara M. Valentine, Esq.
6

7   ON BEHALF OF DEFENDANT ANDREW K. MITCHELL:

8           Walker, Novack Legal Group, LLC
            5013 Pine Creek Drive
9           Westerville, Ohio 43081
            By Scott C. Walker, Esq.
10
                     AND
11
            Mark C. Collins Co., LPA
12          150 East Mound Street, Suite 308
            Columbus, Ohio 43215
13          By Mark C. Collins, Esq.

14

15  ON BEHALF OF DEFENDANT CITY OF COLUMBUS:

16          Columbus City Attorney's Office
            77 North Front Street, 4th Floor
17          Columbus, Ohio 43215
            By Joseph M. Gibson, Esq.
18             Janet R. Arbogast, Esq.

19

20
    ALSO PRESENT:
21
            Damon Willaman
22          Richard Hault
            Michael Schmidt
23

24

3

1                    Thursday Morning Session

2                    January 27, 2022, 9:21 a.m.

3                    - - - - -

4              S T I P U L A T I O N S

5                    - - - - -

6        It is stipulated by counsel in attendance that

7    the deposition of Andrew K. Mitchell, a Defendant

8    herein, called by the Plaintiff for

9    cross-examination, may be taken at this time by

10   the notary by agreement of counsel and without

11   notice or other legal formality; that said

12   deposition may be reduced to writing in stenotypy

13   by the notary, whose notes may thereafter be

14   transcribed out of the presence of the witness;

15   that proof of the official character and

16   qualification of the notary is waived.

17                    - - - - -

18

19

20

21

22

23

24

4

1                           I N D E X

2       Examination By                              Page

3       Mr. Goldstein - Cross                          5
        Mr. Gibson - Cross                            31
4       Mr. Goldstein - Further Cross                 40

5
        Plaintiff's Exhibit                         Page
6
        Exhibit A - Standard Operating Procedure      25
7                   Columbus Police Department (2016)

8

9

10

11

12

13

14

15

16

17

18

19

20

21      (Original exhibit returned to Mr. Goldstein.)

22

23

24

5

1                          - - - - -

2                    ANDREW K. MITCHELL

3     being first duly sworn, testifies and says as

4     follows:

5                    CROSS-EXAMINATION

6     BY MR. GOLDSTEIN:

7     Q.          Good morning.  Can you state your name

8     for the court reporter, please.

9     A.          Andrew Kirk, K-I-R-K, Mitchell.

10    Q.          Mr. Mitchell, my name is David

11    Goldstein.  Along with Sara Valentine, we

12    represent Jane Doe in regard to a civil lawsuit

13    that we have filed against you and the City of

14    Columbus.  I am here this morning to take your

15    discovery deposition.

16                 Have you ever had your deposition taken

17    before?

18    A.          No, I have not.

19    Q.          Okay.  Let me go over a couple ground

20    rules.  I know you've probably testified in court

21    before, but depositions are a little bit different

22    than when you testify in court.

23                 First, I'm going to be asking you

24    several questions this morning.  If at any time I

6

1    ask you a question that you do not understand,

2    please let me know and I'll ask it in a different

3    manner.  If you answer my question with a yes, no,

4    or explanation, I'm going to assume, in fact, that

5    you did understand my question.

6            One of the things -- obviously we're

7    here in the courtroom.  We're wearing masks.

8    Sometimes it's difficult to hear when one is

9    speaking through the mask.  So if you can't hear

10   me or you do not understand me, please let me

11   know, okay?

12   A.      Yes.

13   Q.      And the other rule is, since we're

14   creating a record here today, we have to give

15   verbal responses.  If you shake your head or say

16   uh-huh or huh-uh, I might say is that a yes or a

17   no.  I'm not trying to be rude.  I'm just trying

18   to make sure that we have a clear record, okay?

19   A.      Yes.

20           MR. WALKER:  And, David, just as a

21   housekeeping matter, my name is Scott Walker, and

22   I represent Mr. Mitchell in the civil matter here.

23   As David and I have discussed previously, there

24   are criminal charges that are pending against

7

1    Mr. Mitchell both in the federal court and in the

2    state court.  Some of those issues are likely

3    implicated by the allegations that have been

4    raised in the civil matter.  And because of that,

5    I have with me Mr. Mark Collins, who is

6    Mr. Mitchell's criminal defense attorney.

7              MR. GOLDSTEIN:  Thanks, Scott.  One of

8    the things also on the record, and we'll get to

9    this, it's my understandings that Mr. Mitchell,

10   more likely than not, is going to invoke his Fifth

11   Amendment rights to a majority of my questions.  I

12   am not the kind of attorney that will go through

13   each of my questions because we will be here all

14   afternoon whereby Mr. Mitchell will invoke his

15   Fifth Amendment right.  So when I get to certain

16   topics and Mr. Mitchell does invoke his Fifth

17   Amendment right, I will probably ask counsel,

18   saying, if I focus on this topic, is this where

19   he's going to invoke his Fifth Amendment right.

20   We can have that agreement?

21             MR. COLLINS:  Absolutely.

22             MR. WALKER:  And Mr. Collins will be

23   taking the lead on those matters.

24             MR. GOLDSTEIN:  And that's completely

1    fine.  We understand that.  Thank you.

2    BY MR. GOLDSTEIN:

3    Q.        Mr. Mitchell, also, when I'm asking a

4    question, you might anticipate what I'm going to

5    ask and jump in and start answering the question

6    before I have completed it.  I would just ask that

7    you wait until I finish my question because,

8    again, it's difficult for the court reporter to

9    take down the information when we're talking over

10   one another, okay?

11   A.        Okay.

12   Q.        Also, one of the things, if you can,

13   try and keep your voice up.  It's unusual

14   circumstances where I'm over here when usually we

15   would be closer together, and plus wearing masks.

16   So if you can just try and keep your voice up so I

17   can hear the responses, okay?

18   A.        Okay.

19   Q.        Thank you.  And finally, if at any time

20   you need to take a break or if you have to confer

21   with your counsel, just let me know.  Obviously

22   this is not an endurance contest.  I'm not sure

23   how long we're going to be here this morning, but

24   just let me know.  However, I would just ask that

9

1    if a question is pending, that you answer that

2    question first before we take a break, okay?

3    A.        Okay.

4    Q.        Is there any reason today, albeit

5    physically, mentally, or because you're on any

6    type of medication that you cannot participate in

7    today's deposition?

8    A.        No, there's not.

9    Q.        Is there any reason, albeit physically,

10   mentally, or because you're on any type of

11   medication that you cannot understand my

12   questions?

13   A.        No.

14   Q.        Did you review any documents to prepare

15   for your deposition today?  And let me caution

16   you.  I do not want to know what you talked about

17   with Scott or Mr. Collins.  I'm just asking if you

18   reviewed any documents to prepare for your

19   deposition today.

20   A.        No, I did not.

21   Q.        What is your date of birth?

22   A.        December 1st, 1963.

23   Q.        And what is the last four of your

24   Social Security number?

```
 1    A.         1619.

 2    Q.         Have you ever had to use a different

 3    date of birth for any reason?

 4    A.         Yes, when I -- yes.

 5    Q.         Was that when you were working with the

 6    Columbus Police Department?

 7    A.         Yes.

 8    Q.         And you were acting in an undercover

 9    capacity?

10    A.         Yes.

11    Q.         Okay.  Did you ever use a different

12    date of birth outside of your employment as an

13    undercover officer with CPD?

14    A.         No.

15    Q.         Have you ever had to use a different

16    Social Security number for any reason?

17    A.         Yes.

18    Q.         And, again, was that when you were

19    working in your employment as an undercover

20    officer with CPD?

21    A.         Yes.

22    Q.         Have you ever used a different Social

23    Security number outside of that scope of

24    employment?
```

1   A.        No, sir.

2   Q.        I know that currently you are

3   incarcerated.  But before you were incarcerated,

4   what was your home address?

5   A.        6249 Howard Road.  That's in Sunbury,

6   Ohio, 43074.

7   Q.        And how long did you reside at that

8   address?

9   A.        Since May of 2009.

10  Q.        And I know there were some written

11  questions.  They're called interrogatories.

12  Basically what they mean is written questions that

13  you responded to.  And we received a verification

14  page from you today.

15            It looks like you are currently married

16  to Tanya Mitchell; is that correct?

17  A.        Yes, sir.

18  Q.        And you've been married to her since

19  September of 1999?

20  A.        Correct.

21  Q.        I assume that she was living with you

22  at the Howard Road address until you were

23  incarcerated; is that correct?

24  A.        Yes.

12

1   Q.          Did anyone else live with you at the

2   Howard Road address in 2018 or 2019?

3   A.          Yes.

4   Q.          Who else?

5   A.          My mother-in-law, Jean, J-E-A-N,

6   McLymont, M-C capital L-Y-M, as in Mary, O-N-T.

7   Q.          Anyone else during that timeframe?

8   A.          My daughter, Kamryn Morgan.

9   K-A-M-R-Y-N Morgan.  We have guardianship of her.

10  We were going through the process of adoption, but

11  she's just a guardian right now.

12  Q.          How old is Kamryn?

13  A.          She's six now.

14  Q.          Did you own the Howard Road property?

15  A.          Yes.

16  Q.          Do you currently own any other

17  property?

18  A.          Yes.

19  Q.          About how many other properties do you

20  currently own?

21  A.          I own two apartment complexes and three

22  other homes.

23  Q.          What are the apartment complexes' names

24  and/or addresses?

```
1    A.          No name.  It's 1975 through 1999

2    Denune.  That's D, as in David, E-N-U-N-E, Avenue

3    in Columbus, Ohio.

4    Q.          When you say the two apartment

5    complexes, is that --

6    A.          That's a 16-unit there.

7    Q.          And what about the other apartment

8    complex, what's the address for that?

9    A.          1310 through 1397 Miller Avenue, and

10   that's a 17-unit.

11   Q.          And that's in Columbus as well?

12   A.          Yes.

13   Q.          And then you mentioned some other

14   properties you own.  Can you give me the address

15   of those properties?

16   A.          500 Capitol View Avenue, 1854 Joan

17   Place, and 2097 Paul Drive.  P-A-U-L Drive.

18   That's it.

19   Q.          No other properties that you own other

20   than what you've just described to me, correct?

21   A.          Correct.

22   Q.          Are those all in the Columbus area?

23   A.          Yes.

24   Q.          And are all of those properties in your
```

1    name, or are they in some type of business name,

2    LLC, corporation?

3    A.          They're in my name.

4    Q.          Do you have any ownership in any

5    businesses other than those apartment complexes

6    and the property that you described?

7    A.          The only other thing I have is my real

8    estate license, which is on the shelf right now.

9    Q.          And just so I'm clear, you have no

10   other ownership interest in any businesses, any

11   corporations, LLCs, or anything of that nature

12   that would give you a source of income or a stream

13   of income?

14   A.          No, sir.

15   Q.          And all the properties that you just

16   described, are they still currently in your name?

17   A.          Yes.

18   Q.          Do you have any other source of income

19   other than what maybe those properties bring in to

20   you currently?

21   A.          Just my pension with the City.

22   Q.          Back in 2017, did you have any vehicles

23   titled in your name?

24   A.          Yes.

15

 1    Q.         Do you recall what those vehicles were?

 2    A.         I had a 2013 Cadillac XTS.  A 2007 GMC

 3    pickup truck, 2500.  I had a 2015 Harley Davidson

 4    motorcycle.  That's it, I believe.

 5    Q.         Any additional vehicles that you had

 6    titled in your name in 2018?

 7    A.         Not that I recall.

 8    Q.         Okay.  What color was the 2013 Cadillac

 9    XTS?

10    A.         It's a dark charcoal gray.

11    Q.         And you still own that vehicle?

12    A.         No, not really.

13    Q.         Okay.  When you say, no, not really,

14    explain that to me.

15    A.         The Feds have it right now.

16    Q.         Okay.  Did the Feds seize any other

17    vehicles that you owned that you just described to

18    me other than the 2013 Cadillac?

19    A.         No.

20    Q.         I take it -- have you filed both state

21    and federal tax returns in 2017?

22    A.         Yes.

23    Q.         Okay.  Same, did you file state and

24    federal tax returns in 2018?

16

1   A.          Yes.

2   Q.          It's my understanding that you were

3   employed by the Columbus Police Department, but

4   you eventually resigned; is that correct?

5   A.          I retired.

6   Q.          How long were you employed by CPD?

7   A.          31 years and three months.

8   Q.          Do you recall what year you were

9   assigned to the vice unit?

10  A.          March of 2017.

11  Q.          Prior to joining the vice unit in March

12  of 2017, what was your assignment?

13  A.          I was with the homicide unit.

14  Q.          What years were you with homicide?

15  A.          2012 through 2017.

16  Q.          And before homicide, what was your

17  assignment?

18  A.          I was in the check squad unit.

19  Q.          What years?

20  A.          2009 through 2012.

21  Q.          And before check squad?

22  A.          Exploited children's unit, 2007 through

23  2009.

24  Q.          And before that?

17

```
1    A.          I was in the missing persons unit in

2    2006.

3    Q.          When you joined vice in March of 2017,

4    who was your supervisor, or who would you report

5    to, your sergeant, or commander; do you recall?

6    A.          Mike Evans.  He's my sergeant.

7    Q.          And when you joined vice in March of

8    2017, what were your duties and responsibilities

9    in vice at that time?

10               MR. COLLINS:  Mr. Goldstein, I

11   appreciate the question, but at this point in

12   time, I'm going to interject and advise my client

13   that a lot of the aspects of the federal criminal

14   case, as well as the state criminal case, center

15   around those duties, so I would advise my client

16   to take the Fifth Amendment at this point.

17               Go ahead.  You can answer.

18               Do you want to answer the question?

19   A.          Upon advice of counsel, at this time I

20   am invoking my Fifth Amendment rights against

21   self-incrimination and will not be answering that

22   question.

23               MR. GOLDSTEIN:  Just so I'm clear, and

24   can have something on the record, any questions
```

18

1    that I ask now about his duties with vice going

2    into standard operating procedure, his role in

3    vice, anything of that nature, it's my

4    understanding that Mr. Mitchell would be invoking

5    his Fifth Amendment right?

6              MR. COLLINS:  That's absolutely

7    correct.  And I'm not trying to stop you from

8    obtaining information, but much of both of the

9    cases is about policies and procedures that were

10   in place or not in place in both the criminal

11   cases, both in the state case, as well as the

12   federal case.

13             And, yes, we would be invoking the

14   Fifth on each of those topics.

15             MR. GOLDSTEIN:  Can we have an

16   agreement then, Scott, Joe, and Janet, that

17   obviously I'm not going to go through and ask all

18   these questions that I have regarding vice if we

19   can understand that any questions I was going to

20   ask regarding his duties and responsibilities in

21   vice, his daily activities in vice, policies and

22   procedures in vice specifically to standard

23   operating procedure that was issued, that

24   Mr. Mitchell would be invoking his Fifth Amendment

19

1    right based upon what Mr. Collins has stated so

2    that I can avoid asking those questions today?

3              MR. WALKER:  Yes.

4              MR. GOLDSTEIN:  Okay.  Thank you.

5              I think I'm going to ask a question

6    that Mr. Collins is going to probably ask you to

7    invoke your Fifth Amendment right, but I want to

8    move on now to talk about the superseding

9    indictment that was filed against you.  And I

10   wanted to go into some of the allegations made in

11   that.

12             I assume that if I were to ask those

13   questions, Mr. Collins, that you would be invoking

14   his Fifth Amendment right as well?

15             MR. COLLINS:  Absolutely.  Anything

16   regarding that, we would be -- he will be putting

17   forth his right against self-incrimination based

18   on the Fifth Amendment.

19             MR. GOLDSTEIN:  Let me just ask this of

20   Mr. Mitchell so he can read the statement into the

21   record.

22   Q.        Mr. Mitchell, I wanted to talk about

23   the superseding indictment and ask specifically

24   about some of the victims identified.  Victim

1     No. 1, where there's allegations made that you had

2     sexual conduct and/or contact with her.

3               Do you know who victim No. 1 is?

4     A.        Upon advice of my counsel, at this time

5     I'm invoking my Fifth Amendment right against

6     self-incrimination and will not be answering that

7     question.

8               MR. GOLDSTEIN:  Again, can we have an

9     agreement that if I go into any of the facts or

10    questions regarding the superseding indictment,

11    which also do include, I'll represent, facts and

12    allegations that have been made on behalf of my

13    client against Mr. Mitchell, that Mr. Mitchell

14    would be invoking his Fifth Amendment right.

15              Is that correct, Mr. Collins?

16              MR. COLLINS:  Absolutely.

17              MR. GOLDSTEIN:  And can we have an

18    agreement then that obviously any questions I ask

19    regarding the superseding indictment and the

20    allegations that have been made against

21    Mr. Mitchell involving my client, and any other

22    victim or facts set forth in an indictment,

23    Mr. Mitchell would be invoking his Fifth Amendment

24    right; therefore, I do not have to go through that

1    topic, each question, since he would be invoking

2    that?

3              MR. COLLINS:  Agreed.

4              MR. WALKER:  Sure.

5              MR. GOLDSTEIN:  Thank you.

6    Q.        Mr. Mitchell, again, I assume that your

7    counsel is going to invoke the Fifth, but I need

8    to ask the question.

9              Have you ever had sexual conduct or

10   contact, and if you don't know what those words

11   mean, let me know, with someone who was a

12   prostitute?

13             MR. COLLINS:  Once again, Mr. Mitchell,

14   go ahead.

15   A.        Upon advice of counsel, at this time

16   I'm invoking my Fifth Amendment right against

17   self-incrimination and will not be answering that

18   question.

19   Q.        Mr. Mitchell, have you ever been

20   treated by any healthcare provider, psychologist,

21   psychiatrist, for any addictions?

22             MR. COLLINS:  You can answer that.

23   A.        No.

24   Q.        Have you ever been diagnosed with any

22

1    type of sexual addiction?

2              MR. COLLINS:  I'll ask him to invoke

3    the Fifth on that question.

4    A.         Upon advice of my counsel, at this time

5    I'm invoking my Fifth Amendment right against

6    self-incrimination and will not be answering that

7    question.

8              MR. GOLDSTEIN:  And just to be clear,

9    Scott, and Mr. Collins, if I ask any questions

10   regarding my client and interactions that my

11   client is alleging that she had with Mr. Mitchell,

12   you would be invoking the Fifth Amendment right;

13   is that correct?

14             MR. COLLINS:  Yes, sir.

15             MR. WALKER:  That's correct.

16             MR. GOLDSTEIN:  Okay.  Can we have an

17   agreement, again, that I'm not going to be asking

18   specific questions or general questions regarding

19   the interaction between my client and Mr. Mitchell

20   on the dates that have been alleged in the

21   indictment, and/or now that we have advised

22   counsel about certain dates because Mr. Mitchell

23   would be invoking his Fifth Amendment right; is

24   that agreeable?

23

```
 1              MR. WALKER:  That's correct.
 2              MR. GOLDSTEIN:  Thank you.
 3    Q.        Mr. Mitchell, did you ever reside at
 4    1993 Denune Avenue, Apartment E?
 5              MR. COLLINS:  Once again, I'm going to
 6    ask him to invoke his Fifth Amendment rights.
 7    A.        Upon advice of my counsel, at this time
 8    I'm invoking my Fifth Amendment right against
 9    self-incrimination and will not be answering that
10    question.
11    Q.        Mr. Mitchell, in those answers to
12    written questions, you indicated that you had a
13    cell phone number in 2018 of 614-679-0788; is that
14    correct?
15    A.        Yes.
16    Q.        Do you know who the provider was at
17    that time?
18    A.        It's been so long.  I'm trying to
19    think.  I can't remember the name of the company.
20    Q.        Was that personal cell phone in your
21    name?
22    A.        Yes.
23    Q.        Did you own any other cell phones back
24    in 2018 that you used, either a burner phone, and
```

1    I assume you know what I mean by a burner phone,

2    or any other cellular device that you used in

3    2018?

4              MR. COLLINS:  I'm going to advise him

5    to take the Fifth.

6    A.        Upon advice of counsel, at this time I

7    am invoking my Fifth Amendment right against

8    self-incrimination and will not be answering that

9    question.

10   Q.        Back in 2017, if you provided -- was

11   your cell number also, that you gave me,

12   614-679-0788?

13   A.        Yes.

14   Q.        And that cell phone, was that in your

15   name?

16   A.        Yes.

17   Q.        It's my understanding that when you

18   were employed by CPD, if you were working

19   undercover, then you would also be provided a City

20   cell phone; is that correct?

21   A.        Yes.  I remember the name of the

22   account now.  It was Sprint.

23   Q.        Thank you, sir.

24             MR. GOLDSTEIN:  I'm going to show

1    counsel -- I don't want to show it to him yet,

2    Mark, because I think you're going to invoke the

3    Fifth.  So I just want to put this on the record.

4    I know it's weird.

5                      - - - - -

6          Thereupon, Deposition Exhibit A is marked

7    for purposes of identification.

8                      - - - - -

9          MR. GOLDSTEIN:  I'm showing you what

10   I've marked as Exhibit A.  I will represent to you

11   that that is the Standard Operating Procedure of

12   the Columbus Police Department back in December of

13   2016.

14          I know I did mention this earlier, but

15   am I correct that if I ask Mr. Mitchell any

16   questions about Exhibit A, that you would be

17   invoking his Fifth Amendment right?

18          MR. COLLINS:  Yes.  And I'm not saying

19   that that's not the correct things there, but --

20          MR. GOLDSTEIN:  Yeah, I understand.  We

21   turned it over, and we can authenticate it later.

22   But I'm just -- I planned on asking him some

23   questions.  I don't want to go through them if

24   it's my understanding that anything I ask

26

1    regarding the SOP, that he would be invoking his

2    Fifth Amendment.

3              MR. COLLINS:  And the reason why is

4    because in the state case there's some potential

5    variations and things of that nature of what was

6    going on in the unit at that time that may come

7    into play.

8              MR. GIBSON:  I may ask some questions

9    related to the SOP, not whether he performed the

10   duties, that kind of thing, so we'll cross that

11   bridge when we come to it.

12             MR. COLLINS:  Sure.

13   Q.        And I'm going to ask this question.  If

14   Mr. Collins or Scott tells you to invoke your

15   Fifth Amendment right, please go ahead and read

16   the statement.

17             But back in 2017 and 2018, were you

18   aware of a standard operating procedure that

19   governed the vice unit?

20   A.        Yes.

21             MR. COLLINS:  You can answer.

22             THE WITNESS:  Answer with the

23   paragraph?

24             MR. COLLINS:  No.

27

```
1    A.          Yeah, I knew there were SOPs.

2    Q.          And would you agree with me that back

3    in 2017 and 2018 in your official capacity, that

4    you were required to follow those SOPs?

5                MR. COLLINS:  That we'll -- he'll

6    invoke.

7    Q.          Go ahead and read your statement,

8    Mr. Mitchell.

9    A.          Upon the advice of counsel, at this

10   time I'm invoking my Fifth Amendment right against

11   self-incrimination and will not be answering that

12   question.

13               MR. COLLINS:  And, again,

14   Mr. Goldstein, not to be a hindrance or

15   obstructionist, but there are certain situations

16   and aspects of when the standard procedures can be

17   put aside depending on certain situations, and

18   that is an issue in our state case.

19               MR. GOLDSTEIN:  And I assume,

20   Mr. Collins, that if I were to ask those

21   questions, and, Scott, please chime in since

22   you're representing Mr. Mitchell in the civil

23   capacity, if I were to ask those questions, you

24   would be invoking his Fifth Amendment right?
```

1             MR. COLLINS:  Absolutely.

2             MR. GOLDSTEIN:  So we can have an

3     agreement, again, that I'm not going to touch on

4     that topic because he would be invoking his Fifth

5     Amendment right?

6             MR. COLLINS:  Correct.

7             MR. WALKER:  Agreed.

8             MR. GOLDSTEIN:  Thank you.

9     Q.        Mr. Mitchell, this may seem like an odd

10    question, but back in 2017 or 2018, did you have a

11    particular cologne that you would use?

12            MR. COLLINS:  I'm going to advise him

13    to take the Fifth.

14    A.        Upon advice of counsel, at this time I

15    am invoking my Fifth Amendment right against

16    self-incrimination and will not be answering that

17    question.

18    Q.        Mr. Mitchell, your civil attorney filed

19    what we call an initial disclosure which includes

20    witness lists.  I'm just going to touch on that

21    and see if you have any information about some

22    of the witnesses that were disclosed.  And

23    obviously if Mr. Collins asks you to invoke your

24    Fifth Amendment right, you have the right to do

1    so.

2                If called in this case to testify, do

3    you know what Sergeant Michael Evans would testify

4    about?

5                MR. COLLINS:  I'm going to ask him to

6    invoke just out of a sheer abundance of caution.

7    A.          Upon advice of counsel, at this time

8    I'm invoking my Fifth Amendment right against

9    self-incrimination and will not be answering that

10   question.

11               MR. GOLDSTEIN:  And am I correct,

12   Mr. Collins, or Scott, that if I were to ask him

13   about any of the witnesses disclosed as to what

14   the individuals would testify to regarding this

15   particular case, you would have him invoke his

16   Fifth Amendment right?

17               MR. COLLINS:  If it's related to

18   the CPD employment and things of that nature,

19   yes.

20               MR. GOLDSTEIN:  And I'll represent to

21   you I don't know, but it's related to this case,

22   so obviously these allegations are mixed in with

23   the superseding indictment.

24               So based upon that, I assume you would

30

```
 1    be invoking his Fifth Amendment?

 2              MR. COLLINS:  Yes, sir.

 3              MR. WALKER:  And I'll agree with Mark,

 4    and I'll also interject an additional objection to

 5    the extent that the answer to that question would

 6    just call for speculation.  I don't think he can

 7    testify as to what other people will say.  I don't

 8    think he knows.

 9              MR. GOLDSTEIN:  And that's the whole

10    thing, if he doesn't know, he doesn't know.

11    That's what I was just trying to figure out.

12    Maybe he does.  Maybe he doesn't.

13              But as I understand, you would be

14    invoking his Fifth Amendment right?

15              MR. WALKER:  Correct.

16              MR. GOLDSTEIN:  Okay.  Thank you.

17              I'm just looking through my notes here

18    because of what we've already agreed to.  Why

19    don't I let Mr. Gibson ask a couple questions that

20    may invoke your Fifth Amendment right, and then

21    we'll come back to me, because I think I'm almost

22    done based upon what we've discussed and what

23    counsel has advised you, Mr. Mitchell.  So thank

24    you for your time.
```

31

```
 1                       - - - - -
 2                   CROSS-EXAMINATION
 3     BY MR. GIBSON:
 4     Q.          My name is Joe Gibson.  I'm
 5     representing the City of Columbus.  If I say
 6     anything too quickly or you can't hear me through
 7     my mask or whatever, feel free to ask me to repeat
 8     the question.  And feel free to stop me if you
 9     can't hear me, that kind of thing.
10               Mr. Mitchell, what were your duty hours
11     in 2017 and 2018?
12     A.          Mainly 8 a.m. to 4 p.m., but at times
13     we would come in early, 6 a.m. to 2 p.m.
14     Q.          Did you ever work hours that were not
15     documented by either you or CPD?
16               MR. COLLINS:  I'm going to advise him
17     to take the Fifth on that.
18     A.          Upon advice of counsel, at this time I
19     am invoking my Fifth Amendment right against
20     self-incrimination and will not be answering that
21     question.
22               MR. GIBSON:  Can I get Exhibit A?
23               MR. GOLDSTEIN:  Yeah, it's right here.
24     Q.          I'm going to hand you what's been
```

32

1   marked as States's Exhibit A.  It's the standard

2   operating procedure that we just discussed

3   recently.

4              MR. GOLDSTEIN:  Actually, it's

5   Plaintiff's.

6              MR. GIBSON:  Oh, sorry.  Plaintiff's

7   Exhibit A.

8              MR. GOLDSTEIN:  Joe has his prosecutor

9   hat on.

10  Q.         Plaintiff's Exhibit A, have you ever

11  seen that before?

12  A.         Yes.

13  Q.         Did the City issue that to you at some

14  time?

15  A.         Yes.

16  Q.         I'd like to turn your attention to

17  page 4.  Are you familiar with the section 2.4

18  through 2.5?

19             MR. COLLINS:  Again, I'm going to

20  advise him to take the Fifth Amendment on that.

21             MR. GIBSON:  Just to clarify, before

22  you assert your Fifth Amendment right, what I'm

23  asking is:  Have you seen it before?  Are you

24  aware that it exists?  Not whether you deviated

33

1    from it, that kind of thing.

2              MR. COLLINS:  I understand.  You had

3    asked him if he had gotten a copy of this and he

4    acknowledged that he had, and those were the rules

5    in place.  Any specific subsections and things of

6    that nature potentially can lead to an answer that

7    would incriminate himself in regards to that.

8              MR. GIBSON:  Okay.

9              MR. COLLINS:  You need to answer that.

10   A.        Upon advice of counsel, at this time I

11   am invoking my Fifth Amendment right against

12   self-incrimination and will not be answering that

13   question.

14   Q.        Did you have occasion to -- as a vice

15   officer, were you issued a duty car?

16   A.        Yes.

17   Q.        Okay.  What was the make, model, and

18   year of the duty car?

19   A.        I believe it was a 2008 dark blue

20   Fusion, Ford Fusion.

21   Q.        And was that used in covert operations?

22   A.        Yes.

23   Q.        Did you use any other duty cars during

24   the 2017 through 2018 period?

34

1   A.        Yes.

2   Q.        Can you describe those?

3             MR. WALKER:  Can you just clarify.  Use

4   any other car, what do you mean by that?

5             MR. GIBSON:  I'm sorry.

6             MR. WALKER:  During duty or...

7   Q.        Did you use any other duty cars during

8   the 2017 and 2018 period?

9   A.        Yes.

10  Q.        Can you describe them?

11  A.        Well, when I first came out in March

12  2017, I had a black, two-door Focus, and then a

13  couple months later, I did get the blue Fusion,

14  probably like July.

15  Q.        July of '17?

16  A.        Yes.  And then in about May of 2018, I

17  got the black vehicle.  I'm trying to think of the

18  name of it.  At this time, I can't recall the

19  name.  It was the one involved in the shooting.

20  Q.        Any other car after the shooting?

21  A.        No.

22  Q.        In addition to those cars that you've

23  described as your personal vehicles, I'm talking

24  about the Cadillac, the GMC, and the Harley, in

1    addition to those personal vehicles, did you ever

2    drive any other personal vehicles, for example,

3    your wife's car or anyone else's?

4    A.        Yeah, I drove my wife's car before.

5    Q.        Can you please describe that vehicle?

6    A.        She has a 2015 Lincoln Navigator.

7    Q.        Do you remember what color?

8    A.        Black.

9    Q.        Are you aware of any policies regarding

10   -- from the SOP, are you aware of any policy

11   regarding using personal cars while on duty?

12            MR. COLLINS:  I'll advise him to take

13   the Fifth on that.

14   A.        On the advice of counsel, at this time

15   I'm invoking my Fifth Amendment right against

16   self-incrimination and will not be answering that

17   question.

18   Q.        I'm going to ask here three questions.

19   I guess I'll just ask -- I anticipate that he'll

20   answer -- I would rather have one blanket Fifth

21   Amendment assertion for all three questions.

22            MR. COLLINS:  Go ahead and ask them.

23   Q.        Did you always carry a covert ID?  Did

24   you always carry a City cell phone?  And did you

36

1    always carry a radio while on duty?

2              MR. COLLINS:  You had to throw that

3    "always" in there didn't you, Joe?  I'm just

4    messing with you.

5              I'm going to advise him to take the

6    Fifth.

7    A.         Upon advice of counsel, at this time

8    I'm invoking my Fifth Amendment right against

9    self-incrimination and will not be answering that

10   question.

11   Q.         I'd like to turn your attention again

12   to Plaintiff's Exhibit A, page 14.  I suppose,

13   since we've already gone over this, you're at

14   least aware that the policy exists.  But I'm --

15   have you ever seen policy 3.4 at the bottom of

16   page 14?

17             MR. COLLINS:  Again, I'll advise him to

18   take the Fifth on that.

19   A.         Upon advice of counsel, at this time I

20   am invoking my Fifth Amendment right against

21   self-incrimination and will not be answering that

22   question.

23             MR. GIBSON:  I guess I'll ask

24   Mr. Collins:  Does this still fall under the

37

1    blanket of he's acknowledging that he received the

2    SOP, but he's not going to discuss --

3              MR. COLLINS:  The specifics.

4              MR. GIBSON:  -- knowledge about

5    certain --

6              MR. COLLINS:  Absolutely.

7    Q.        Are you aware of any City policy or

8    directive that allows for the abduction or

9    kidnapping of a suspect or any other person?

10             MR. COLLINS:  I'm going to advise him

11   to take his Fifth Amendment.

12   A.        Upon advice of counsel, at this time I

13   am invoking my Fifth Amendment right against

14   self-incrimination and will not be answering that

15   question.

16   Q.        Are you aware of any CPD policy that

17   allows or directs an officer to rape a suspect or

18   anyone else?

19             MR. COLLINS:  Same request.

20   A.        Upon advice of counsel, at this time I

21   am invoking my Fifth Amendment right against

22   self-incrimination and will not be answering that

23   question.

24   Q.        Are you aware of any CPD policy

38

```
 1    allowing for or directing an officer to engage in

 2    consensual sex while on duty?

 3                   MR. COLLINS:   (Indicates).

 4    A.             Upon advice of counsel, at this time I

 5    am invoking my Fifth Amendment right against

 6    self-incrimination and will not be answering that

 7    question.

 8    Q.             I suppose it to be the same answer, but

 9    I would direct your attention again to the SOP,

10    specifically section 8, which would be on page --

11    beginning on page 56.

12                   Were you in receipt of or were you

13    aware of section 8.1, which includes the

14    definition of sexual conduct, sexual contact, and

15    sexual activity?

16                   MR. COLLINS:   Same advice.

17    A.             Upon advice of counsel, at this time I

18    am invoking my Fifth Amendment right against

19    self-incrimination and will not be answering that

20    question.

21    Q.             I'm assuming the same answer.   Within

22    section 8, I would direct your attention to page

23    -- I wrote the page numbers down on everything

24    else but this one.
```

```
 1                  Page 57, 8.1.4, reporting sexual

 2      activity.  Were you aware of that section?

 3                  MR. COLLINS:  Same request.

 4      A.          Upon advice of counsel, at this time I

 5      am invoking my Fifth Amendment right against

 6      self-incrimination and will not be answering that

 7      question.

 8      Q.          While on duty, did you always -- while

 9      engaging in covert operations regarding

10      prostitution or anything else, did you always have

11      at least one other vice detective with you while

12      conducting those investigations?

13                  MR. COLLINS:  Same advice.

14      A.          Upon advice of counsel, at this time I

15      am invoking my Fifth Amendment right against

16      self-incrimination and --

17      Q.          And I'm assuming --

18      A.          -- will not be answering --

19      Q.          I'm sorry.

20      A.          -- any questions at this time.

21      Q.          I apologize for talking over you there.

22                  Are you aware of, or were you in

23      receipt of, a policy requiring that second

24      officer?
```

1          MR. COLLINS:  (Indicating).

2   A.          Upon advice of counsel, at this time I

3   am invoking my Fifth Amendment right against

4   self-incrimination and will not be answering that

5   question.

6          MR. GIBSON:  I don't have anything

7   else.

8          MR. GOLDSTEIN:  I just have a couple

9   additional questions, Mr. Mitchell.

10          - - - - -

11          FURTHER CROSS-EXAMINATION

12  BY MR. GOLDSTEIN:

13  Q.          You advised us about some of the

14  properties that you owned and we went through

15  those.

16          As we sit here today, can you agree

17  with me that you will not try and sell or dispose

18  of those properties while at least the civil case

19  is pending?

20          MR. COLLINS:  Can we go off the record?

21          MR. GOLDSTEIN:  Sure.

22          (A discussion is held off the record.)

23  BY MR. GOLDSTEIN:

24  Q.          Mr. Mitchell, I had an opportunity to

1    speak with your civil counsel and your criminal

2    counsel, and it's my understanding that the

3    agreement is that if you need or decide to dispose

4    of any of the properties that you mentioned today,

5    before you will do any of that, you will speak

6    with your attorneys who will then contact me so

7    that we can discuss whether it would be proper or

8    not, and what to do with any of those funds.

9             Is that a fair statement?

10            MR. WALKER:  That's a fair statement.

11   Q.       Do you acknowledge that, Mr. Mitchell?

12   A.       Yes.

13            MR. WALKER:  And you agree to that?

14            THE WITNESS:  Yes.

15            MR. GOLDSTEIN:  Can we go off the

16   record.

17            (A discussion is held off the record.)

18   BY MR. GOLDSTEIN:

19   Q.       Mr. Mitchell, we just had a discussion.

20   As you know, we filed this civil lawsuit and named

21   Jane Doe, and I believe that the identity of our

22   client has been disclosed to you.  Her name is

23   Amber James.

24            Do you know -- did you know Amber James

42

1    at any time prior to the criminal indictment in

2    federal court being filed against you?

3                  MR. COLLINS:  I'll advise him to

4    invoke.

5    A.            Upon advice of counsel, at this time I

6    am invoking my Fifth Amendment right against

7    self-incrimination and will not be answering that

8    question.

9    Q.            And, Mr. Mitchell, did you ever have

10   any sexual conduct, contact, with Ms. James at any

11   time?

12                 MR. COLLINS:  I would advise him the

13   same.

14   A.            Upon advice of counsel, at this time I

15   am invoking my Fifth Amendment right against

16   self-incrimination and will not be answering that

17   question.

18                 MR. GOLDSTEIN:  I don't have any

19   additional questions.  Thank you, Mr. Mitchell.

20                 MR. GIBSON:  We don't have anything

21   either.

22                 MR. WALKER:  Nothing from us.

23                 Thank you.

24                 MR. GOLDSTEIN:  Waive or read?

43

1          MR. WALKER:  We'll read.

2          (Signature not waived.)

3                - - - - -

4     Thereupon, the foregoing proceedings

5     concluded at 10:07 a.m.

6                - - - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

44

```
1   State of Ohio     :      C E R T I F I C A T E
    County of Franklin: SS
2
        I, Lisa Wilson, a Notary Public in and for the
3   State of Ohio, certify that Andrew K. Mitchell was
    by me duly sworn to testify to the whole truth in
4   the cause aforesaid; testimony then given was
    reduced to stenotype in the presence of said
5   witness, afterwards transcribed by me; the
    foregoing is a true record of the testimony so
6   given; and this deposition was taken at the time
    and place specified on the title page.
7
        Pursuant to Rule 30(e) of the Federal Rules of
8   Civil Procedure, the witness and/or the parties
    have not waived review of the deposition
9   transcript.

10      I certify I am not a relative, employee,
    attorney or counsel of any of the parties hereto,
11  and further I am not a relative or employee of any
    attorney or counsel employed by the parties hereto,
12  or financially interested in the action.

13      IN WITNESS WHEREOF, I have hereunto set my hand
    and affixed my seal of office at Columbus, Ohio, on
14  February 10, 2022.

15

16

17

18

19
    _____
20  Lisa Wilson, Notary Public - State of Ohio
    My commission expires September 16, 2025.
21

22

23

24
```

45

Witness Errata and Signature Sheet
Correction or Change Reason Code
1-Misspelling  2-Word Omitted  3-Wrong Word
4-Clarification  Fifth-Other (Please explain)

Page/Line          Correction or Change          Reason Code

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____

_____     _____     _____


I, Andrew K. Mitchell, have read the entire
transcript of my deposition taken in this matter,
or the same has been read to me.  I request that
the changes noted on my errata sheet(s) be entered
into the record for the reasons indicated.

Date_____Signature_____

The witness has failed to sign the deposition
within the time allowed.

Date_____Signature_____

                    Ref: LW304073AM  S-LW P-KC

**Exhibits**

**304073 Exhibit A** 4:6 25:6, 10,16 31:22 32:1,7,10 36:12

---

**1**

**1** 20:1,3
**10:07** 43:5
**1310** 13:9
**1397** 13:9
**14** 36:12,16
**16-unit** 13:6
**1619** 10:1
**17** 34:15
**17-unit** 13:10
**1854** 13:16
**1963** 9:22
**1975** 13:1
**1993** 23:4
**1999** 11:19 13:1
**1st** 9:22

---

**2**

**2** 31:13
**2.4** 32:17
**2.5** 32:18
**2006** 17:2
**2007** 15:2 16:22
**2008** 33:19
**2009** 11:9 16:20,23
**2012** 16:15, 20
**2013** 15:2,8, 18
**2015** 15:3 35:6
**2016** 25:13
**2017** 14:22 15:21 16:10, 12,15 17:3,8 24:10 26:17 27:3 28:10 31:11 33:24 34:8,12
**2018** 12:2 15:6,24 23:13,24 24:3 26:17 27:3 28:10 31:11 33:24 34:8,16
**2019** 12:2
**2097** 13:17
**2500** 15:3

---

**3**

**3.4** 36:15
**31** 16:7

---

**4**

**4** 31:12 32:17
**43074** 11:6

---

**5**

**500** 13:16
**56** 38:11
**57** 39:1

---

**6**

**6** 31:13
**614-679-0788** 23:13 24:12
**6249** 11:5

---

**8**

**8** 31:12 38:10,22
**8.1** 38:13
**8.1.4** 39:1

---

**A**

**a.m.** 31:12, 13 43:5
**abduction** 37:8
**absolutely** 7:21 18:6 19:15 20:16 28:1 37:6
**abundance** 29:6
**account** 24:22
**acknowledge** 41:11
**acknowledged** 33:4
**acknowledging** 37:1
**acting** 10:8
**activities** 18:21
**activity** 38:15 39:2
**addiction** 22:1
**addictions** 21:21
**addition** 34:22 35:1
**additional** 15:5 30:4

40:9 42:19
**address** 11:4,8,22 12:2 13:8,14
**addresses** 12:24
**adoption** 12:10
**advice** 17:19 20:4 21:15 22:4 23:7 24:6 27:9 28:14 29:7 31:18 33:10 35:14 36:7, 19 37:12,20 38:4,16,17 39:4,13,14 40:2 42:5,14
**advise** 17:12,15 24:4 28:12 31:16 32:20 35:12 36:5, 17 37:10 42:3,12
**advised** 22:21 30:23 40:13
**afternoon** 7:14
**agree** 27:2 30:3 40:16 41:13
**agreeable** 22:24
**agreed** 21:3 28:7 30:18
**agreement** 7:20 18:16 20:9,18 22:17 28:3 41:3
**ahead** 17:17 21:14 26:15 27:7 35:22
**albeit** 9:4,9
**allegations** 7:3 19:10 20:1,12,20 29:22
**alleged** 22:20
**alleging** 22:11
**allowing** 38:1
**Amber** 41:23,24
**Amendment** 7:11,15,17, 19 17:16,20 18:5,24 19:7,14,18 20:5,14,23 21:16 22:5, 12,23 23:6,8 24:7 25:17 26:2,15

27:10,24 28:5,15,24 29:8,16 30:1,14,20 31:19 32:20, 22 33:11 35:15,21 36:8,20 37:11,13,21 38:5,18 39:5,15 40:3 42:6,15
**and/or** 12:24 20:2 22:21
**Andrew** 5:2, 9
**answering** 8:5 17:21 20:6 21:17 22:6 23:9 24:8 27:11 28:16 29:9 31:20 33:12 35:16 36:9, 21 37:14,22 38:6,19 39:6,18 40:4 42:7,16
**answers** 23:11
**anticipate** 8:4 35:19
**apartment** 12:21,23 13:4,7 14:5 23:4
**apologize** 39:21
**area** 13:22
**asks** 28:23
**aspects** 17:13 27:16
**assert** 32:22
**assertion** 35:21
**assigned** 16:9
**assignment** 16:12,17
**assume** 6:4 11:21 19:12 21:6 24:1 27:19 29:24
**assuming** 38:21 39:17
**attention** 32:16 36:11 38:9,22
**attorney** 7:6, 12 28:18
**attorneys** 41:6
**authenticate** 25:21
**Avenue** 13:2, 9,16 23:4
**avoid** 19:2

**aware** 26:18 32:24 35:9, 10 36:14 37:7,16,24 38:13 39:2, 22

---

**B**

**back** 14:22 23:23 24:10 25:12 26:17 27:2 28:10 30:21
**based** 19:1, 17 29:24 30:22
**Basically** 11:12
**beginning** 38:11
**behalf** 20:12
**birth** 9:21 10:3,12
**bit** 5:21
**black** 34:12, 17 35:8
**blanket** 35:20 37:1
**blue** 33:19 34:13
**bottom** 36:15
**break** 8:20 9:2
**bridge** 26:11
**bring** 14:19
**burner** 23:24 24:1
**business** 14:1
**businesses** 14:5,10

---

**C**

**Cadillac** 15:2,8,18 34:24
**call** 28:19 30:6
**called** 11:11 29:2
**capacity** 10:9 27:3,23
**capital** 12:6
**Capitol** 13:16
**car** 33:15,18 34:4,20 35:3,4
**carry** 35:23, 24 36:1
**cars** 33:23 34:7,22 35:11

**case** 17:14 18:11,12 26:4 27:18 29:2,15,21 40:18

**cases** 18:9, 11

**caution** 9:15 29:6

**cell** 23:13,20, 23 24:11,14, 20 35:24

**cellular** 24:2

**center** 17:14

**charcoal** 15:10

**charges** 6:24

**check** 16:18, 21

**children's** 16:22

**chime** 27:21

**circumstances** 8:14

**City** 5:13 14:21 24:19 31:5 32:13 35:24 37:7

**civil** 5:12 6:22 7:4 27:22 28:18 40:18 41:1, 20

**clarify** 32:21 34:3

**clear** 6:18 14:9 17:23 22:8

**client** 17:12, 15 20:13,21 22:10,11,19 41:22

**closer** 8:15

**Collins** 7:5, 21,22 9:17 17:10 18:6 19:1,6,13,15 20:15,16 21:3,13,22 22:2,9,14 23:5 24:4 25:18 26:3, 12,14,21,24 27:5,13,20 28:1,6,12,23 29:5,12,17 30:2 31:16 32:19 33:2,9 35:12,22 36:2,17,24 37:3,6,10,19 38:3,16 39:3,13 40:1,20 42:3,12

**cologne** 28:11

**color** 15:8 35:7

**Columbus** 5:14 10:6 13:3,11,22 16:3 25:12 31:5

**commander** 17:5

**company** 23:19

**completed** 8:6

**completely** 7:24

**complex** 13:8

**complexes** 12:21 13:5 14:5

**complexes'** 12:23

**concluded** 43:5

**conduct** 20:2 21:9 38:14 42:10

**conducting** 39:12

**confer** 8:20

**consensual** 38:2

**contact** 20:2 21:10 38:14 41:6 42:10

**contest** 8:22

**copy** 33:3

**corporation** 14:2

**corporations** 14:11

**correct** 11:16,20,23 13:20,21 16:4 18:7 20:15 22:13, 15 23:1,14 24:20 25:15, 19 28:6 29:11 30:15

**counsel** 7:17 8:21 17:19 20:4 21:7,15 22:4,22 23:7 24:6 25:1 27:9 28:14 29:7 30:23 31:18 33:10 35:14 36:7, 19 37:12,20 38:4,17 39:4,14 40:2 41:1,2 42:5, 14

**couple** 5:19 30:19 34:13 40:8

**court** 5:8,20, 22 7:1,2 8:8 42:2

**courtroom** 6:7

**covert** 33:21 35:23 39:9

**CPD** 10:13, 20 16:6 24:18 29:18 31:15 37:16, 24

**creating** 6:14

**criminal** 6:24 7:6 17:13,14 18:10 41:1 42:1

**cross** 26:10

**CROSS-EXAMINATION** 5:5 31:2 40:11

_____

**D**

**daily** 18:21

**dark** 15:10 33:19

**date** 9:21 10:3,12

**dates** 22:20, 22

**daughter** 12:8

**David** 5:10 6:20,23 13:2

**Davidson** 15:3

**December** 9:22 25:12

**decide** 41:3

**defense** 7:6

**definition** 38:14

**Denune** 13:2 23:4

**Department** 10:6 16:3 25:12

**depending** 27:17

**deposition** 5:15,16 9:7, 15,19 25:6

**depositions** 5:21

**describe** 34:2,10 35:5

**detective** 39:11

**deviated** 32:24

**device** 24:2

**diagnosed** 21:24

**difficult** 6:8 8:8

**direct** 38:9, 22

**directing** 38:1

**directive** 37:8

**directs** 37:17

**disclosed** 28:22 29:13 41:22

**disclosure** 28:19

**discovery** 5:15

**discuss** 37:2 41:7

**discussed** 6:23 30:22 32:2

**discussion** 40:22 41:17, 19

**dispose** 40:17 41:3

**documented** 31:15

**documents** 9:14,18

**Doe** 5:12 41:21

**drive** 13:17 35:2

**drove** 35:4

**duly** 5:3

**duties** 17:8, 15 18:1,20 26:10

**duty** 31:10 33:15,18,23 34:6,7 35:11 36:1 38:2 39:8

_____

**E**

**E-N-U-N-E** 13:2

**earlier** 25:14

**early** 31:13

**else's** 35:3

**employed** 16:3,6 24:18

**employment** 10:12,19,24 29:18

**endurance** 8:22

**engage** 38:1

**engaging** 39:9

**estate** 14:8

**Evans** 17:6 29:3

**eventually**

16:4

**Exhibit** 25:6, 10,16 31:22 32:1,7,10 36:12

**exists** 32:24 36:14

**explain** 15:14

**explanation** 6:4

**Exploited** 16:22

**extent** 30:5

_____

**F**

**fact** 6:4

**facts** 20:9, 11,22

**fair** 41:9,10

**fall** 36:24

**familiar** 32:17

**federal** 7:1 15:21,24 17:13 18:12 42:2

**Feds** 15:15, 16

**feel** 31:7,8

**figure** 30:11

**file** 15:23

**filed** 5:13 15:20 19:9 28:18 41:20 42:2

**finally** 8:19

**fine** 8:1

**finish** 8:7

**focus** 7:18 34:12

**follow** 27:4

**Ford** 33:20

**foregoing** 43:4

**free** 31:7,8

**funds** 41:8

**Fusion** 33:20 34:13

_____

**G**

**gave** 24:11

**general** 22:18

**Gibson** 26:8 30:19 31:3, 4,22 32:6,21 33:8 34:5 36:23 37:4 40:6 42:20

**give** 6:14

13:14 14:12
**GMC** 15:2
34:24
**Goldstein**
5:6, 11 7:7,
24 8:2
17:10,23
18:15 19:4,
19 20:8,17
21:5 22:8,16
23:2 24:24
25:9,20
27:14,19
28:2,8
29:11,20
30:9,16
31:23 32:4,8
40:8,12,21,
23 41:15,18
42:18,24
**Good** 5:7
**governed**
26:19
**gray** 15:10
**ground** 5:19
**guardian**
12:11
**guardianship**
12:9
**guess** 35:19
36:23

**H**

**hand** 31:24
**Harley** 15:3
34:24
**hat** 32:9
**he'll** 27:5
35:19
**head** 6:15
**healthcare**
21:20
**hear** 6:8,9
8:17 31:6,9
**held** 40:22
41:17
**hindrance**
27:14
**home** 11:4
**homes** 12:22
**homicide**
16:13,14,16
**hours** 31:10,
14
**housekeeping** 6:21
**Howard**
11:5,22
12:2,14
**huh-uh** 6:16

**I**

**ID** 35:23

**identification**
25:7
**identified**
19:24
**identity**
41:21
**implicated**
7:3
**incarcerated**
11:3,23
**include**
20:11
**includes**
28:19 38:13
**income**
14:12,13,18
**incriminate**
33:7
**Indicating**
40:1
**indictment**
19:9,23
20:10,19,22
22:21 29:23
42:1
**individuals**
29:14
**information**
8:9 18:8
28:21
**initial** 28:19
**interaction**
22:19
**interactions**
22:10
**interest**
14:10
**interject**
17:12 30:4
**interrogatories** 11:11
**investigations** 39:12
**invoke** 7:10,
14,16,19
19:7 21:7
22:2 23:6
25:2 26:14
27:6 28:23
29:6,15
30:20 42:4
**invoking**
17:20 18:4,
13,24 19:13
20:5,14,23
21:1,16
22:5,12,23
23:8 24:7
25:17 26:1
27:10,24
28:4,15 29:8
30:1,14
31:19 33:11
35:15 36:8,
20 37:13,21
38:5,18
39:5,15 40:3
42:6,15

**involved**
34:19
**involving**
20:21
**issue** 27:18
32:13
**issued** 18:23
33:15
**issues** 7:2

**J**

**J-E-A-N** 12:5
**James**
41:23,24
42:10
**Jane** 5:12
41:21
**Janet** 18:16
**Jean** 12:5
**Joan** 13:16
**Joe** 18:16
31:4 32:8
36:3
**joined** 17:3,7
**joining** 16:11
**July** 34:14,
15
**jump** 8:5

**K**

**K-A-M-R-Y-N**
12:9
**K-I-R-K** 5:9
**Kamryn**
12:8,12
**kidnapping**
37:9
**kind** 7:12
26:10 31:9
33:1
**Kirk** 5:9
**knew** 27:1
**knowledge**
37:4

**L**

**L-Y-M** 12:6
**lawsuit** 5:12
41:20
**lead** 7:23
33:6
**license** 14:8
**Lincoln** 35:6
**lists** 28:20
**live** 12:1
**living** 11:21
**LLC** 14:2
**LLCS** 14:11

**long** 8:23
11:7 16:6
23:18
**lot** 17:13

**M**

**M-C** 12:6
**made** 19:10
20:1,12,20
**majority** 7:11
**make** 6:18
33:17
**manner** 6:3
**March** 16:10,
11 17:3,7
34:11
**Mark** 7:5
25:2 30:3
**marked** 25:6,
10 32:1
**married**
11:15,18
**Mary** 12:6
**mask** 6:9
31:7
**masks** 6:7
8:15
**matter** 6:21,
22 7:4
**matters** 7:23
**Mclymont**
12:6
**medication**
9:6,11
**mentally** 9:5,
10
**mention**
25:14
**mentioned**
13:13 41:4
**messing**
36:4
**Michael** 29:3
**Mike** 17:6
**Miller** 13:9
**missing** 17:1
**Mitchell** 5:2,
9,10 6:22
7:1,9,14,16
8:3 11:16
18:4,24
19:20,22
20:13,21,23
21:6,13,19
22:11,19,22
23:3,11
25:15 27:8,
22 28:9,18
30:23 31:10
40:9,24
41:11,19
42:9,19
**Mitchell's**
7:6

**mixed** 29:22
**model** 33:17
**months** 16:7
34:13
**Morgan** 12:8,
9
**morning** 5:7,
14,24 8:23
**mother-in-
law** 12:5
**motorcycle**
15:4
**move** 19:8

**N**

**named** 41:20
**names** 12:23
**nature** 14:11
18:3 26:5
29:18 33:6
**Navigator**
35:6
**notes** 30:17
**number** 9:24
10:16,23
23:13 24:11
**numbers**
38:23

**O**

**O-N-T** 12:6
**objection**
30:4
**obstructionist** 27:15
**obtaining**
18:8
**occasion**
33:14
**odd** 28:9
**officer** 10:13,
20 33:15
37:17 38:1
39:24
**official** 27:3
**Ohio** 11:6
13:3
**operating**
18:2,23
25:11 26:18
32:2
**operations**
33:21 39:9
**opportunity**
40:24
**owned** 15:17
40:14
**ownership**
14:4,10

**P**

**P-A-U-L** 13:17

**p.m.** 31:12, 13

**paragraph** 26:23

**participate** 9:6

**Paul** 13:17

**pending** 6:24 9:1 40:19

**pension** 14:21

**people** 30:7

**performed** 26:9

**period** 33:24 34:8

**person** 37:9

**personal** 23:20 34:23 35:1,2,11

**persons** 17:1

**phone** 23:13, 20,24 24:1, 14,20 35:24

**phones** 23:23

**physically** 9:5,9

**pickup** 15:3

**place** 13:17 18:10 33:5

**Plaintiff's** 32:5,6,10 36:12

**planned** 25:22

**play** 26:7

**point** 17:11, 16

**Police** 10:6 16:3 25:12

**policies** 18:9,21 35:9

**policy** 35:10 36:14,15 37:7,16,24 39:23

**potential** 26:4

**potentially** 33:6

**prepare** 9:14,18

**previously** 6:23

**prior** 16:11 42:1

**procedure** 18:2,23

25:11 26:18 32:2

**procedures** 18:9,22 27:16

**proceedings** 43:4

**process** 12:10

**proper** 41:7

**properties** 12:19 13:14, 15,19,24 14:15,19 40:14,18 41:4

**property** 12:14,17 14:6

**prosecutor** 32:8

**prostitute** 21:12

**prostitution** 39:10

**provided** 24:10,19

**provider** 21:20 23:16

**psychiatrist** 21:21

**psychologist** 21:20

**purposes** 25:7

**put** 25:3 27:17

**putting** 19:16

**Q**

**question** 6:1, 3,5 8:4,5,7 9:1,2 17:11, 18,22 19:5 20:7 21:1,8, 18 22:3,7 23:10 24:9 26:13 27:12 28:10,17 29:10 30:5 31:8,21 33:13 35:17 36:10,22 37:15,23 38:7,20 39:7 40:5 42:8,17

**questions** 5:24 7:11,13 9:12 11:11, 12 17:24 18:18,19 19:2,13 20:10,18 22:9,18 23:12 25:16, 23 26:8 27:21,23

30:19 35:18, 21 39:20 40:9 42:19

**quickly** 31:6

**R**

**radio** 36:1

**raised** 7:4

**rape** 37:17

**read** 19:20 26:15 27:7 42:24 43:1

**real** 14:7

**reason** 9:4,9 10:3,16 26:3

**recall** 15:1,7 16:8 17:5 34:18

**receipt** 38:12 39:23

**received** 11:13 37:1

**recently** 32:3

**record** 6:14, 18 7:8 17:24 19:21 25:3 40:20,22 41:16,17

**regard** 5:12

**related** 26:9 29:17,21

**remember** 23:19 24:21 35:7

**repeat** 31:7

**report** 17:4

**reporter** 5:8 8:8

**reporting** 39:1

**represent** 5:12 6:22 20:11 25:10 29:20

**representing** 27:22 31:5

**request** 37:19 39:3

**required** 27:4

**requiring** 39:23

**reside** 11:7 23:3

**resigned** 16:4

**responded** 11:13

**responses** 6:15 8:17

**responsibiliti es** 17:8 18:20

**retired** 16:5

**returns** 15:21,24

**review** 9:14

**reviewed** 9:18

**rights** 7:11 17:20 23:6

**Road** 11:5,22 12:2,14

**role** 18:2

**rude** 6:17

**rule** 6:13

**rules** 5:20 33:4

**S**

**Sara** 5:11

**scope** 10:23

**Scott** 6:21 7:7 9:17 18:16 22:9 26:14 27:21 29:12

**section** 32:17 38:10, 13,22 39:2

**Security** 9:24 10:16, 23

**seize** 15:16

**self-incrimination** 17:21 19:17 20:6 21:17 22:6 23:9 24:8 27:11 28:16 29:9 31:20 33:12 35:16 36:9, 21 37:14,22 38:6,19 39:6,16 40:4 42:7,16

**sell** 40:17

**September** 11:19

**sergeant** 17:5,6 29:3

**set** 20:22

**sex** 38:2

**sexual** 20:2 21:9 22:1 38:14,15 39:1 42:10

**shake** 6:15

**sheer** 29:6

**shelf** 14:8

**shooting** 34:19,20

**show** 24:24 25:1

**showing** 25:9

**signature**

43:2

**sir** 11:1,17 14:14 22:14 24:23 30:2

**sit** 40:16

**situations** 27:15,17

**Social** 9:24 10:16,22

**SOP** 26:1,9 35:10 37:2 38:9

**SOPS** 27:1,4

**source** 14:12,18

**speak** 41:1,5

**speaking** 6:9

**specific** 22:18 33:5

**specifically** 18:22 19:23 38:10

**specifics** 37:3

**speculation** 30:6

**Sprint** 24:22

**squad** 16:18, 21

**standard** 18:2,22 25:11 26:18 27:16 32:1

**start** 8:5

**state** 5:7 7:2 15:20,23 17:14 18:11 26:4 27:18

**stated** 19:1

**statement** 19:20 26:16 27:7 41:9,10

**States's** 32:1

**stop** 18:7 31:8

**stream** 14:12

**subsections** 33:5

**Sunbury** 11:5

**superseding** 19:8,23 20:10,19 29:23

**supervisor** 17:4

**suppose** 36:12 38:8

**suspect** 37:9,17

**sworn** 5:3

**T**

taking 7:23
talk 19:8,22
talked 9:16
talking 8:9
  34:23 39:21
Tanya 11:16
tax 15:21,24
tells 26:14
testified 5:20
testifies 5:3
testify 5:22
  29:2,3,14
  30:7
thing 14:7
  26:10 30:10
  31:9 33:1
things 6:6
  7:8 8:12
  25:19 26:5
  29:18 33:5
throw 36:2
time 5:24
  8:19 17:9,
  12,19 20:4
  21:15 22:4
  23:7,17 24:6
  26:6 27:10
  28:14 29:7
  30:24 31:18
  32:14 33:10
  34:18 35:14
  36:7,19
  37:12,20
  38:4,17
  39:4,14,20
  40:2 42:1,5,
  11,14
timeframe
  12:7
times 31:12
titled 14:23
  15:6
today 6:14
  9:4,15,19
  11:14 19:2
  40:16 41:4
today's 9:7
topic 7:18
  21:1 28:4
topics 7:16
  18:14
touch 28:3,
  20
treated 21:20
truck 15:3
turn 32:16
  36:11
turned 25:21
two-door
  34:12
type 9:6,10
  14:1 22:1

**U**

uh-huh 6:16
undercover
  10:8,13,19
  24:19
understand
  6:1,5,10 8:1
  9:11 18:19
  25:20 30:13
  33:2
understandin
g 16:2 18:4
  24:17 25:24
  41:2
understandin
gs 7:9
unit 16:9,11,
  13,18,22
  17:1 26:6,19
unusual 8:13

**V**

Valentine
  5:11
variations
  26:5
vehicle
  15:11 34:17
  35:5
vehicles
  14:22 15:1,
  5,17 34:23
  35:1,2
verbal 6:15
verification
  11:13
vice 16:9,11
  17:3,7,9
  18:1,3,18,
  21,22 26:19
  33:14 39:11
victim 19:24
  20:3,22
victims
  19:24
View 13:16
voice 8:13,
  16

**W**

wait 8:7
Waive 42:24
waived 43:2
Walker 6:20,
  21 7:22 19:3
  21:4 22:15
  23:1 28:7
  30:3,15
  34:3,6
  41:10,13
  42:22 43:1
wanted
  19:10,22

wearing 6:7
  8:15
weird 25:4
wife's 35:3,4
witnesses
  28:22 29:13
words 21:10
work 31:14
working
  10:5,19
  24:18
written
  11:10,12
  23:12
wrote 38:23

**X**

XTS 15:2,9

**Y**

year 16:8
  33:18
years 16:7,
  14,19